**Konrad L. Trope**  (California SBN: 133214)
TROPE LAW GROUP, P.C.
5737 Kanan Rd., #585
Agoura Hills, CA 91301
Phone:  (818) 575-7423
Email: ktrope@tropelawgroup.com

Attorneys for Plaintiff Konrad L. Trope

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| Konrad L. Trope, a resident of the State of California;<br><br>                                    Plaintiff,<br><br>              vs.<br><br>Theodore Robert Mandes, Jr., a resident of the State of Florida; Theodore Robert Mandes, Sr., a resident of the State of Florida; and DOES 1 through 10, inclusive,<br><br>                                    Defendants. | Case No: _____<br><br>**COMPLAINT FOR:**<br><br>(1) Breach of Oral Contract;<br>(2) Violations of the Racketeering Influence and Corrupt Organizations Act ("RICO") 18 U.S.C. § § 1961 *et seq.* (wire fraud);<br>(3) Violations of the Racketeering Influence and Corrupt Organizations Act ("RICO") 18 U.S.C. § § 1961 *et seq.* (conversion);<br>(4) Fraud (Intentional Misrepresentation);<br>(5) Conversion;<br>(6) Unjust Enrichment;<br><br>**JURY DEMAND** |

  **COMES NOW**, Plaintiff KONRAD L. TROPE, a resident of the State of California; presenting their complaint herein against Defendants Theodore Robert Mandes, Jr., a resident of the State of Florida; Theodore Robert Mandes, Sr., a resident of the State of Florida:

### THE PARTIES

  1.  Plaintiff Konrad L. Trope, is a resident of the State of California.

  2.  Defendant Theodore Robert Mandes, Jr., is a resident of the State of Florida.

3.      Defendant Theodore Robert Mandes-SR. ("Mandes-SR."), is a resident of the State of Florida.

4.      The true names and capacities of the Defendants sued in this Complaint as DOES 1 through 10, inclusive, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiffs who therefore sue these Defendants by such fictitious names.  Plaintiffs will amend this Complaint to set forth the true names and capacities of DOES 1 through 10, inclusive, when they have been ascertained or at the time of trial herein.  Plaintiff is informed, believes and thereon alleges that each of these such fictitiously named Defendants participated in some manner in the events and occurrences referred to hereinafter and/or proximately caused the damages complained of herein.

5.      Plaintiff is informed, believe and thereon allege that, at all times herein mentioned, each of the Defendants (including inter alia, the fictitiously named Defendants) was the agent, servant, employee or co-conspirator of each of the other Defendants, and doing the things herein alleged, was acting in the scope of his, her, or its actual, apparent or special authority as such agent, servant, employee or co-conspirator, and with the permission or consent of each such co-Defendant.

## **JURISDICTION AND VENUE**

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1138(a) in that violations of Federal statutes took place, namely the Federal RICO statute set forth at 18 U.S.C. § § 1962 and 1964. Additionally, this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiff is a resident of the State of California and Defendants are residents of the State of Florida. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as the non-federal question claims for breach of contract, fraud and conversion arise from the same nucleus of operative facts that support the Federal questions.

///

7.     In addition, a percipient witness who helped participate in the conspiracy to violate the Federal RICO statute is Ms. Cynthia C. Costello. She is also a resident of the State of Florida and is the wife of Theodore Mandes-SR.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

8.     In or about November 2021, Plaintiff Konrad L. Trope ("Trope") was introduced to Theodore Robert Mandes, Junior ("TR"), by Kristin Ann Herold ("Ms. Herold"). The introduction took place at Plaintiff's home in Los Angeles, California on Thanksgiving in November 2021.

9.     Defendant Theodore Robert Mandes ("TR") then proceeded to make numerous representations at Thanksgiving dinner on November 25, 2021 about his skill and expertise as having been a floor trader on the New York Stock Exchange for over 25 years. Defendant TR then added that he now had his own financial investment firm in Florida and that he had numerous "heavy players" backing him. Defendant TR claimed to be a Series 7 Licensed Broker.

10.     Defendant TR claimed that he had well over 25 year's experience as a stockbroker and had worked for various stock brokerage firms in New York.

11.     Subsequently, Defendant TR repeatedly claimed in numerous phone conversations throughout November 2021-November 2022, that some of his clients included former Congressman Mark Foley, of Florida; Carey Warren, Founding Partner and Chief Enterprise Officer at Coterie Media, a major advertising/public relations firm; J. Ira Harris, an alleged major financier. Defendant TR's father, Mandes-SR., also represented that these individuals were clients of his son, Defendant TR.

12.     Further discussions took place between Plaintiff Trope and Defendant TR in December 2021, January and February 2022 concerning the possibility of Plaintiff Trope investing with Defendant TR whereby Defendant TR would be retained to provide professional investing and financial advice for the timing and nature of investments.

13.     Indeed, Defendant TR represented to Plaintiff Trope in April and May of 2022 that his expertise was a "day trader" whereby trends in the market could be spotted and taken advantage of on a quick turnaround.

14.     Among those activities which Defendant TR claimed expertise were in trading options including "puts and calls" as well as shorting stocks.

15.     Furthermore, Defendant TR claimed that he had a proprietary algorithm for assessing when to sell and buy stocks, options, and other financial instruments.

16.     Defendant TR repeatedly alleged in telephone calls between his location in Florida and Plaintiff Trope's location in California, that he was licensing and promoting an algorithm from a FinTech software startup, Wallstreet.io, located in Santa Barbara, California.

17.     In fact, in the Summer of 2022, Defendant TR arranged with Plaintiff Trope to fly out from Florida to California, whereby Defendant TR was going to stay at Plaintiff Trope's home for a few days, during which time, Defendant TR was going to accompany Plaintiff Trope to Wallstreet.io's headquarters in Santa Barabara during this scheduled trip. Defendant TR promised to introduce Plaintiff Trope to various officers and decision-makers at Wallstreet.io, with the objective of convincing Wallstreet.io to consider possibly retaining Plaintiff Trope for their intellectual property legal work. At the last minute, Defendant TR cancelled the trip, claiming that Wallstreet.io was having internal business issues.

18.     Defendant TR's father, Defendant Mandes-SR, repeatedly assured Plaintiff Trope that his son's clients included ex-Congressman Mark Foley, from Florida, and Carey Warren, of Coterie Media, and that Defendant TR's relationship with Wallstreet.io was "solid". Moreover, Carey Warren, of Coterie Media, called Plaintiff Trope in August of 2022, with Defendant TR on the phone as well, to vouch for Defendant TR's expertise and integrity.

///

COMPLAINT

19.     In addition, Defendant TR repeatedly stated orally and indeed in writing, via email and text messages, that he was extremely confident of Plaintiff Trope's account being up by at least 20% by December 31, 2022, a period of less than seven (7) months from the time of Plaintiff Trope's initial investment with Defendant TR.

20.     Plaintiff Trope then in or about June of 2022 invested the sum of $50,000 with Defendant TR whereby Plaintiff Trope opened an account through interactive brokers known as IKBR. While the trading account was set up in Plaintiff Trope's name, Defendant TR had access to execute trades through the account.

21.     Between June and October 2022, the account lost $36,000. Plaintiff Trope being disappointed at these results withdrew the remaining $16,000.

22.     Plaintiff Trope then reviewed his email correspondence as well as text correspondence of the proceeding seven (7) months and even a casual reading of those emails and text messages clearly indicate that Defendant TR repeatedly assured Plaintiff Trope that he was either making money or worst case scenario was holding and breaking even despite the overall declines in the Dow Jones Average and the Standard Poor's 500 Index.

23.     Plaintiff Trope had reasonably relied on these representations given the fact that Defendant TR made numerous assurances that he knew what he was doing. Plaintiff Trope was not a sophisticated investor. However, Defendant TR knew at the time of making these representations that they were false, and he knew at the time that he intended Plaintiff Trope to rely on these false representations.

24.     Moreover, to further induce Plaintiff Trope to invest with Defendant TR and allow him to manage his money, Defendant TR had at least one, if not two, of his alleged clients call Plaintiff Trope and assured him over the phone that Defendant TR the requisite knowledge and expertise.

///

25.     Ms. Herold had been Plaintiff Trope's real estate agent in California at the time of the November 2021 introduction, and at the time, Plaintiff Trope had no reason to discount the representations that were being repeated by Defendant TR, given that Defendant TR was the source of all these representations.

26.     Furthermore, Defendant TR introduced Plaintiff Trope to his father, Defendant Mandes-SR., and they spoke several times by phone throughout the period of June 2022 to October 2022 in which Defendant Mandes-SR repeatedly assured Plaintiff Trope that Defendant TR was sufficiently experienced. In addition, Defendant Mandes-SR was very grateful that Plaintiff Trope was not only a client of Defendant TR's but also kind of a "big brother".

27.     This conduct by Defendant TR and Defendant Mandes-SR was nothing more than a giant charade to disguise the fact that Defendant TR never had a license from any regulatory authority to trade stocks or manage investments. Plaintiff Trope only discovered this fraudulent scheme in November of 2022.

28.     Indeed, Plaintiff Trope made an inquiry, through a major brokerage firm, and was unable to find any record of Defendant TR ever having a brokerage license or a trading license, or a license of any kind involving any stock exchange.

29.     When Plaintiff Trope questioned Defendant TR about this lack of a broker's license in a phone call, Defendant TR said he had a license but had let it expire but could renew it or activate it on 24 hours' notice if it was necessary. Further, causing confusion regarding this scam or fraud being perpetrated by Defendant TR and his father Mandes-SR., Plaintiff Trope repeatedly asked for interim statements showing how his account was performing.

30.     In response, Defendant TR would send snap shots of his computer screen and then expect Plaintiff Trope to understand the information that was being transmitted. Plaintiff Trope finally pointed out that given Defendant TR's alleged 25 years' experience in the industry, it should not have been a surprise for Plaintiff Trope to request a formal printed accounting statement similar to any other

COMPLAINT

accounting statement that he alleged has gone out to other clients or that was issued by other brokerage companies for whom Defendant TR had worked.

31.     These phone calls regarding the lack of statement took place in November of 2022, Furthermore, during these phone calls in November of 2022, Defendant TR tried telling Plaintiff Trope that the information he was viewing on his end through the Interactive Brokerage Account Portal was not as complete as the information Plaintiff Trope could see if he logged into his own account. However, upon further investigation, this turned out to be a grossly false representation.

32.     After several exhaustive email exchanges and telephone calls during November 2022 with Defendant TR in which Plaintiff's account showed dramatic losses of nearly 70% rather than profits of 20%, Defendant TR claimed he would make up the losses to Plaintiff Trope.

33.     Furthermore, he stated he was the only broker on the planet who would make up these losses even though he claimed no responsibility for the losses because of a written agreement. However, that written agreement was never signed by Plaintiff Trope because he asked for certain revisions to it, which Defendant TR never completed.

34.     Indeed, instead of receiving a standard agreement in June of 2022, Defendant TR sent a text photo of an agreement between himself and one of his other clients and asked Plaintiff Trope to prepare his own agreement that Defendant TR would review and ultimately sign.

35.     Plaintiff Trope thought this was rather odd and did not follow through as he got distracted with other things. Thus, there is no executed written agreement between Plaintiff Trope and Defendant TR, whereby Defendant TR is indemnified from any and all losses incurred by his incompetence in managing Plaintiff Trope's account.

///

36.     Further telephonic and email discussions occurred between Plaintiff Trope and Defendant TR toward the end of November of 2022. During those calls and emails, Defendant TR said that skill expertise as a day trader was not with options or assessing growth stocks but in trading futures. Plaintiff Trope is not sophisticated enough to understand the differences among all of these different financial strategies as investment vehicles.

37.     Nevertheless, to hear that the expertise presented by Defendant TR in April of 2022 had been disavowed in November of 2022, along with all other facts set forth hereinabove, led Plaintiff Trope to conclude that he had been a victim of wire fraud, mail fraud, conversion, and breach of oral contract, which all serve as predicate acts to support Claims for Relief under the Federal RICO Act.

38.     Furthermore, Defendant TR's RICO violations were facilitated and assisted by Defendant TR's father Defendant Mandes-SR, and his wife, Cynthia C. Costello ("Cynthia"), who is Defendant TR's stepmother.

39.     On or about November 30, 2022, Plaintiff Trope sent a letter to both Defendant TR and Defendant Mandes-SR demanding all losses be reimbursed by February 1, 2023. To date no response has been received, thereby forcing the filing of this lawsuit.

40.     Plaintiff is informed and believes and thereon alleges upon further investigation that Defendant TR is a long-time cocaine addict. Defendant TR admitted his past cocaine drug history to Plaintiff Trope in late October and early November 2022, when Plaintiff Trope started asking questions about the losses in his account.

**FIRST CLAIM FOR RELIEF**

(Breach of Oral Contract)

AS AND FOR A FIRST CLAIM FOR RELIEF FOR BREACH OF ORAL CONTRACT AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES:

41.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 40, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full herein.

42.     There was an oral contract between Plaintiff and Defendants, and each of them, the terms of which are set forth at Paragraphs 9 through 41.

43.     Plaintiff has performed all terms, conditions and covenants required by it under the oral contract described hereinabove.

44.     Defendants have failed to perform the various material covenants, terms and conditions required of them under the written contracts as set forth hereinabove. Thus, Defendants are in material breach of the oral contract between the parties.

45.     As a result of Defendants' breach of the terms and conditions of the oral agreement between Plaintiff and Defendants, in each of them Plaintiff is damaged in the sum of at least $80,000 or according to proof at the time of trial to gather with interest thereon under California Law accruing from and after the breach date set forth herein.

46.     Plaintiff has employed Trope Law Group, P.C., a duly licensed and registered California Professional Corporation to file and prosecute this Action and has been obligated to pay said law corporation a fee for the services rendered by Plaintiff at the rate of $750 per hour pursuant to its retainer agreement.

**SECOND CLAIM FOR RELIEF**

(Violation of the Racketeering Influence and Corrupt Organizations Act, 18 U.S.C. § § 1961 *et seq.* ("RICO")(Wire Fraud))

AS AND FOR A SECOND CLAIM FOR RELIEF FOR VIOLATION OF THE RACKETEERING  INFLUENCE AND CORRUPT ORGANIZATIONS ACT ("RICO")(WIRE FRAUD) AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES:

COMPLAINT

47.     Plaintiff realleges and incorporates by reference paragraphs 1 through 46 inclusive, of Plaintiff's Complaint herein above with the same force and affect as those set forth in full herein below.

48.     The relevant time period for Defendant's pattern of racketeering stems from at least November of 2021 and possibly earlier through the present, but at this point discovery is yet unknown and continues through the filing of this RICO Complaint.

49.     Defendant Theodore Robert Mandes, Jr. ("TR") is now, and at all times relevant to this action, a RICO Person ("RICO Person") within the meaning of 18 U.S.C. § § 1961(3) and 1962(c). Theodore Robert Mandes, Sr. ("Mandes-SR.") is also now, and at all times relevant to this action, a RICO Person ("RICO Person") within the meaning of 18 U.S.C. § § 1961(3) and 1962(c).

## **The RICO Enterprise**

50.     The RICO persons have used their family as the "Enterprise" within the meaning of 18 U.S.C. § § 1961(4) to carry out the pattern of racketeering activity. This Enterprise consists of the RICO persons and the RICO business namely the Mandes family. This Enterprise possessed and continues to possess a common purpose and goal, a membership, an organizational structure, and an ongoing relationship between the RICO persons and the RICO business with sufficient longevity to permit and enable pursuit of the Enterprise's purpose and long-term-objective through continuous course of conduct that affected and continues to affect interstate commerce.

51.     This RICO Enterprise is in fact a "association-in-fact-enterprise" within the meaning of 18 U.S.C. § § 1961(4) to carry out the pattern of racketeering activity. This "association-in-fact-enterprise" is the RICO Family which consists of Defendant Theodore Robert Mandes Jr., Defendant Robert Mandes Sr. and Cynthina C. Costello, the wife of RICO Person Mandes-SR., to help and facilitate the violations alleged herein.

COMPLAINT

52.     This RICO Family Enterprise possessed and continues to possess a common purpose and goal, membership, organizational structure and ongoing relationship between the RICO Persons and those unnamed witnesses who helped facilitate the RICO Family's conduct for sufficient longevity to commit and enable pursuit of the RICO Family's Enterprise's purpose and long-term-objectives through a continuous course of conduct that affected and continues to affect interstate commerce.

53.     This "association-in-fact-enterprise" of Defendants also consists of non-defendants, such as Cynthia C. Costello, as well as DOES 1 – 10, inclusive (the RICO Family and Friends). Plaintiff is informed and believes and based upon such information and belief alleges that all of the aforementioned individuals facilitated and assisted the RICO Persons defined herein above in carrying out the Enterprise described herein above and herein below, but their identities are not fully known to Plaintiff beyond Cynthia Costello. Plaintiff will amend his Complaint to ser forth their true names when same have been ascertained.

54.     The RICO Family Enterprise exists separate and apart from the RICO persons pattern of racketeering activity in as much as the RICO amily has multiple goals, not all of which are fraudulent or illegal. The unlawful activity engaged in by the RICO Family includes functioning as a regular family.

55.     However, the RICO Persons (Theodore Robert Mandes Jr. and Robert Mandes Sr.) along with the RICO Family and Friends, have since at least November 2021, used Family Enterprise to conduct the repetitive acts of wire fraud which comprised the pattern of racketeering as well as continuous acts set forth herein above, which constitute repeated violations of criminal acts of wire fraud and conversion.

///

///

///

COMPLAINT

56.     As part of the wire fraud and conversion scheme, Defendants, in conjunction with the RICO Family made repeated representations concerning the expertise and services of Defendant TR concerning his abilities to manage investment funds.

57.     At all relevant times, the Defendants and other conspirators associated with the RICO Family Enterprise, conducted and participated, directly or indirectly, in the conduct of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of the Federal RICO Statute at 18 U.S.C. § 1961(5) and 18 U.S.C. § 1962(e).

58.     Specifically at all relevant times, the RICO Persons and others conspiring with the RICO Defendants engaged in a "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above against Plaintiff, all with the express purpose of defrauding Plaintiff and illegally obtaining the significant sums of money that he was fraudulently induced to invest with Defendant TR.

59.     In further acts of this racketeering pattern, the RICO Persons, fraudulently induced Plaintiff Trope to deposit funds with Defendant TR with discretion to invest said funds when in fact Defendant TR neither had the expertise nor the required licensing to act as a financial adviser or to make investment decisions.

60.     Thus, the acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. § § 1956 and 1957 (wire fraud, money laundering, and theft/ conversion). Defendants and their accomplices and co-conspirators each committed and or aided and abetted in the commission of two or more of these acts of racketeering activities.

61.     Defendants acts in furtherance of their wire fraud and conversion scheme to launder funds and convert same to their own use and deprive Plaintiff of rightful ownership of his funds constituted a pattern of racketeering activity within

COMPLAINT

the meaning of 18 U.S.C. § 1961(5) because the predicate acts are repetitive, related and continuous.

62.     Each predicate act described herein above had the same or similar purpose: predicate acts involve material misrepresentations, omissions and concealment and esteemed to injure Plaintiff and defraud Plaintiff of his monies in an investment scam. This pattern of racketeering is separate and distinct from the activities of the RICO enterprise, mainly the RICO family, namely the Mandes family.

63.     Furthermore, each one of these financial transactions constitutes a separate act unless there is a pattern of illegal conduct that qualifies for invocation of the RICO Statute. *See e.g., United States v. Prescott*, 42 F. 3d 1165 (8th Circuit 1994); *United States v. Conley*, 826 F.Supp. 1536 (W.D.Pa. 1998).

64.     There is territorial jurisdiction for these violations as the transactions in question not only exceed $10,000, but also the wire fraud was by a US citizen and the conduct occurred in the United States. See 18 U.S.C. § § 1956(f) and 1957(d).

65.     These acts of racketeering as previously described constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1951(5).

66.     The acts alleged related to each other by virtue of common participants, common victims and a common result of fraud, and enriching the Defendants and their co-conspirators at Plaintiffs expense while concealing the conspirators' fraudulent activities. Wire fraud scheme continues and would have remained unknown but for Plaintiff having discovered the fraudulent activities of Defendant Theodore Robert Mandes Jr. and his father when TR admitted to his lack of expertise as well as his drug habits and lack of a securities broker's license.

67.     To date, Plaintiff has been damaged in at least the sum of $80,000 or according to proof at the time of trial plus pre-judgment interest and attorneys' fees.
///

68.     Pursuant to RICO, 18 U.S.C. § 1964(c) Plaintiff is entitled to recover three-times his damages plus three-times his costs and attorneys' fees from the Defendants.

### THIRD CLAIM FOR RELIEF

(18 U.S.C. § § 1961 *et seq.* ("RICO")(Conversion))

AS AND FOR A THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF THE RACKETEERING INFLUENCE AND CORRUPT ORGANIZATIONS ACT ("RICO") (CONVERSION) AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES:

69.     Plaintiff realleges and incorporates by reference paragraphs 1 through 68 inclusive, of Plaintiff's Complaint herein above with the same force and affect as those set forth in full herein below.

70.     The relevant time period for Defendant's pattern of racketeering stems from at least November of 2021 and possibly earlier through the present, but at this point discovery is yet unknown and continues through the filing of this RICO Complaint.

71.     Defendant Theodore Robert Mandes ("TR") is now, and at all times relevant to this action, a RICO Person ("RICO Person") within the meaning of 18 U.S.C. § § 1961(3) and 1962(c). Defendant Theodore Robert Mandes, Sr. ("Mandes-SR.") is also now, and at all times relevant to this action, a RICO Person ("RICO Person") within the meaning of 18 U.S.C. § § 1961(3) and 1962(c).

### The RICO Enterprise

72.     The RICO persons have used their family as the "Enterprise" within the meaning of 18 U.S.C. § § 1961(4) to carry out the pattern of racketeering activity. This Enterprise consists of the RICO persons and the RICO business namely the Mandes family. This Enterprise possessed and continues to possess a common purpose and goal, a membership, an organizational structure, and an ongoing relationship between the RICO persons and the RICO business with

sufficient longevity to permit and enable pursuit of the Enterprise's purpose and long-term-objective through continuous course of conduct that affected and continues to affect interstate commerce. This RICO Enterprise is in fact a "association-in-fact-enterprise" within the meaning of 18 U.S.C. § § 1961(4) to carry out the pattern of racketeering activity. This "association-in-fact-enterprise" is the RICO family which consists of Theodore Robert Mandes, Robert Mandes Sr. and Cynthia C. Costello, the wife of RICO person Robert Mandes Sr., to help and facilitate the violations alleged herein.

73.     This RICO Family Enterprise possessed and continues to possess a common purpose and goal, membership, organizational structure and ongoing relationship between the RICO Persons and those unnamed witnesses who helped facilitate the RICO Family's conduct for sufficient longevity to commit and enable pursuit of the RICO Family's Enterprise's purpose and long-term-objectives through a continuous course of conduct that affected and continues to affect interstate commerce.

74.     This "association-in-fact-enterprise" of Defendants also consists of non-defendants, such as Cynthia C. Costello, as well as DOES 1 – 10, inclusive (the RICO Family and Friends). Plaintiff is informed and believes and based upon such information and belief alleges that all of the aforementioned individuals facilitated and assisted the RICO Persons defined herein above in carrying out the Enterprise descried herein above and herein below, but their identities are not fully known to Plaintiff beyond Cynthia Costello. Plaintiff will amend his Complaint to ser forth their true names when same have been ascertained.

75.     The RICO Family Enterprise exists separate and apart from the RICO persons pattern of racketeering activity in as much as the RICO Family has multiple goals, not all of which are fraudulent or illegal. The unlawful activity engaged in by the RICO Family includes functioning as a regular family.

///

76.     However, the RICO persons (Theodore Robert Mandes Jr. and Theodore Robert Mandes Sr.) along with the RICO Family and Friends, have since at least November 2021, used Family Enterprise to conduct the repetitive acts of wire fraud which comprised the pattern of racketeering as well as continuous acts set forth herein above, which constitute repeated violations of criminal acts of wire fraud and conversion.

77.     As part of the wire fraud and conversion scheme, Defendants, in conjunction with the RICO Family made repeated representations concerning the expertise and services of Defendant TR concerning his abilities to manage investment funds.

78.     At all relevant times, the Defendants and other conspirators associated with the RICO Family Enterprise, conducted and participated, directly or indirectly, in the conduct of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of the Federal RICO Statute at 18 U.S.C. § 1961(5) and 18 U.S.C. § 1962(e).

79.     Specifically at all relevant times, the RICO Persons and others conspiring with the RICO Defendants engaged in a "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above against Plaintiff, all with the express purpose of defrauding Plaintiff and illegally obtaining the significant sums of money that he was fraudulently induced to invest with Defendant TR.

80.     In further acts of this racketeering pattern, the RICO Persons, fraudulently induced Plaintiff Trope to deposit funds with Defendant TR with discretion to invest said funds when in fact Defendant TR neither had the expertise nor the required licensing to act as a financial adviser or to make investment decisions.

81.     Thus, the acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. § § 1956 and 1957 (wire fraud, money laundering,

and theft/ conversion). Defendants and their accomplices and co-conspirators each committed and or aided and abetted in the commission of two or more of these acts of racketeering activities.

82.     Defendants acts in furtherance of their wire fraud and conversion scheme to launder funds and convert same to their own use and deprive Plaintiff of rightful ownership of his funds constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because the predicate acts are repetitive, related and continuous.

83.     Each predicate act described herein above had the same or similar purpose: predicate acts involve material misrepresentations, omissions and concealment and esteemed to injure Plaintiff and defraud Plaintiff of his monies in an investment scam. This pattern of racketeering is separate and distinct from the activities of the RICO enterprise, mainly the RICO family, namely the Mandes family.

84.     Furthermore, each one of these financial transactions constitutes a separate act unless there is a pattern of illegal conduct that qualifies for invocation of the RICO Statute. *See e.g., United States v. Prescott*, 42 F. 3d 1165 (8th Circuit 1994); *United States v. Conley*, 826 F. 1536 (W.N.D.A. 1998).

85.     There is territorial jurisdiction for these violations as the transactions in question not only exceed $10,000, but also the wire fraud was by a U.S. citizen and the conduct occurred in the United States. See 18 U.S.C. § § 1956(f) and 1957(d).

86.     These acts of racketeering as previously described constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1951(5).

87.     The acts alleged related to each other by virtue of common participants, common victims and a common result of fraud, and enriching the Defendants and their co-conspirators at Plaintiffs expense while concealing the conspirators' fraudulent activities. Wire fraud scheme continues and would have

remained unknown but for Plaintiff having discovered the fraudulent activities of Defendant Theodore Robert Mandes Jr. and his father when TR admitted to his lack of expertise as well as his drug habits and lack of a securities broker's license.

88.     To date, Plaintiff has been damaged in at least the sum of $80,000 or according to proof at the time of trial plus pre-judgment interest and attorneys' fees.

89.     Pursuant to RICO, 18 U.S.C. § 1964(c) Plaintiff is entitled to recover three-times his damages plus three-times his costs and attorneys' fees from the Defendants.

## FOURTH CLAIM FOR RELIEF

### (Fraud and Deceit - Intentional Misrepresentation - Suppression of Fact)

AS AND FOR A FOURTH CLAIM FOR RELIEF FOR FRAUD AND DECEIT - INTENTIONAL MISREPRESENTATION - SUPPRESSION OF FACT, AGAINST ALL DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

90.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 89, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth herein.

91.     Plaintiff is informed and believes, and based upon such information and belief alleges, that commencing on or about November 25, 2021 and continuing through the present, Defendants, and each of them, through TR and Mandes-SR., falsely, fraudulently and intentionally made the representations telephonically and in writing, via e-mails and text messages as set forth in Paragraphs 9 through 40 hereinabove.

92.     The representations made by Defendants, and each of them, were in fact false, fraudulent and intentional.  The true facts were that Defendants, and each of them, through TR, knew, at the time they made the foregoing false and fraudulent representations that Defendants had no intention of ever properly investing and managing Plaintiff's Trope's investment or paying the outstanding

amounts due to Plaintiff and in truth and in fact it was a "scheme" orchestrated by Defendants to fraudulently deprive Plaintiff of his monies to which he was rightfully entitled.

93.     All of the false and fraudulent representations were made by Defendants, through TR and Mandes-SR., to induce Plaintiff into placing investment funds with Defendants so Defendants, and each of them, could divert the funds received to their own use and benefit.

94.     Plaintiff is further informed and believes and based thereon alleges that Defendants never had any intention whatsoever of returning any principal or profits to Plaintiff.

95.     When Defendants, and each of them, intentionally made these false and fraudulent representations they knew them to be false, and these false and fraudulent representations were made by Defendants, and each of them, with the intent to defraud and deceive Plaintiff, and with the intent to induce Plaintiffs to act in the manner herein alleged.

96.     Plaintiff, at the time these false and fraudulent representations were intentionally made by Defendants, and each of them, and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true. In justifiable reliance on these false and fraudulent representations, Plaintiff was induced to invest funds with Defendants.

97.     Had Plaintiff known the actual facts, he never would have entrusted these funds with Defendants. Plaintiff's reliance on Defendants' false and fraudulent representations was justified because Defendants had made numerous reasonable representations that were vouched for and confirmed by knowledgeable and reliable third parties.

98.      As a proximate result of Defendants' fraud and deceit and the facts herein alleged, Plaintiff was deprived of the monies to which it was rightfully entitled, all to Plaintiff's damage in at least the sum of Eighty Thousand Dollars

($80,000.00) plus interest, plus costs according to proof and attorneys' fees according to proof but in at least the sum of $80,000.00, or in an amount to be determined at trial.

99.     The aforementioned conduct of Defendants, and each of them, was intentional misrepresentation, deceit or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of punitive and exemplary damages, as well as an award of attorneys' fees to the extent allowed by law.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

AS AND FOR AN FIFTH CLAIM FOR RELIEF FOR CONVERSION AGAINST ALL DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

100.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 99, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth herein.

101.     From in or about April 2022 through the present, Plaintiff was and still is the owner of and entitled to possession of the $80,000.00 taken by Defendants.

102.     From in or about April 2022 through the present, the above-mentioned property had a value of at least $80,000.00.

103.     From in or about April 2022 through the present, Defendants, and each of them, took the above-mentioned property from Plaintiff and converted the same to their own use and benefit.

104.     From in or about April 2022 through the present, when Plaintiff first realized that Defendants, and each of them, had taken Plaintiff's monies/property and converted same to their own use and benefit, Plaintiff demanded, orally and in

COMPLAINT

writing, that Defendants immediately turn over the above-mentioned property to Plaintiff but Defendants, and each of them, to date, have failed and refused and continue to fail and refuse to do so.

105.    As a proximate result of Defendants' conversion, Plaintiff has been deprived of the use and benefit to be derived from the property converted, all to Plaintiff's damage in at least the sum of $80,000.00 or according to proof at the time of trial.

106.    The conduct of Defendants, and each of them, was done with the intention on the part of the Defendants of depriving Plaintiff of its  property and/or legal rights and otherwise causing injury and was despicable conduct that subjected Plaintiff to cruel and unjust hardships in conscious disregard of Plaintiff's rights so as to justify an award of exemplary and punitive damages.

### SIXTH CLAIM FOR RELIEF

(Unjust Enrichment and Imposition of Constructive Trust)

AS A SIXTH CLAIM FOR RELIEF BASED ON UNJUST ENRICHMENT AND IMPOSITION OF CONSTRUCTIVE TRUST AGAINST ALL DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

107.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 106, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth herein.

108.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, have received a benefit at Plaintiff's expense.

109.    As alleged herein, as a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has been damaged in at least the sum of $80,000.00 or an amount to be proved at trial together with interest thereon.

110.    As further alleged herein, Defendants, and each of them, have enjoyed a benefit as alleged in this Complaint to the detriment of Plaintiff. Plaintiff is informed and believes and thereon alleges that the benefits conferred upon

COMPLAINT

Defendants, and each of them, was the result of mistake, fraud or coercion, or request, thus making their enrichment unjust.

111.    Accordingly, in order to protect the Plaintiff, pending the final resolution of this action, Plaintiff requests that the Court impose a Constructive Trust over a sufficient amount of Defendants' assets and resources in order to ensure that Plaintiff is made whole at the conclusion of this action.

## **PRAYER**

WHEREFORE, Plaintiff prays for relief as follows:

**FOR THE FIRST CLAIM FOR RELIEF FOR BREACH OF ORAL CONTRACT AS TO THEODORE ROBERT MANDES, JR., THEODORE ROBERT MANDES-SR AND DOES 1 THROUGH 10, INCLUSIVE:**

1.    For damages in at least the sum of Eighty Thousand Dollars ($80,000) including late fees or an amount to be proved at trial;

**FOR THE SECOND CLAIM FOR RELIEF FOR VIOLATION OF THE RACKETEERING   INFLUENCE AND CORRUPT ORGANIZATIONS ACT ("RICO") (WIRE FRAUD) AS TO THEODORE ROBERT MANDES, JR., THEODORE ROBERT MANDES-SR AND DOES 1 THROUGH 10, INCLUSIVE:**

2.    For damages in at least the sum of Eighty Thousand Dollars ($80,000) including late fees or an amount to be proved at trial;

**FOR THE THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF THE RACKETEERING INFLUENCE AND CORRUPT ORGANIZATIONS ACT ("RICO") (MONEY LAUNDERING) AS TO THEODORE ROBERT MANDES, JR., THEODORE ROBERT MANDES-SR AND DOES 1 THROUGH 10, INCLUSIVE:**

3.    For damages in at least the sum of Eighty Thousand Dollars ($80,000) including late fees or an amount to be proved at trial;

**FOR THE FOURTH CLAIM FOR RELIEF FOR FRAUD AND DECEIT - INTENTIONAL MISREPRESENTATION - SUPPRESSION OF FACT AS TO THEODORE ROBERT MANDES, JR., THEODORE ROBERT MANDES-SR AND DOES 1 THROUGH 10, INCLUSIVE:**

4.      For damages in at least the sum of Eighty Thousand Dollars ($80,000) including late fees or an amount to be proved at trial;

**FOR THE FIFTH CLAIM FOR RELIEF FOR RELIEF FOR CONVERSION AS TO THEODORE ROBERT MANDES, JR., THEODORE ROBERT MANDES-SR AND DOES 1 THROUGH 10, INCLUSIVE:**

5.      For damages in at least the sum of Eighty Thousand Dollars ($80,000) including late fees or an amount to be proved at trial;

**FOR THE SIXTH CLAIM FOR RELIEF BASED ON UNJUST ENRICHMENT AND IMPOSITION OF CONSTRUCTIVE TRUST AS TO THEODORE ROBERT MANDES, JR., THEODORE ROBERT MANDES-SR AND DOES 1 THROUGH 10, INCLUSIVE:**

6.      For damages in at least the sum of Eighty Thousand Dollars ($80,000) including late fees or an amount to be proved at trial;

**FOR ALL CLAIMS FOR RELIEF:**

55.      For costs of suit incurred herein; and

56.      For any such other and further relief as this Honorable Court deems just and proper.

DATED:      October 24, 2023      TROPE LAW GROUP, P.C.


_____
KONRAD L. TROPE,
ATTORNEYS FOR PLAINTIFF

1

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by a jury in the above-entitled action.

DATED:     October 24, 2023     TROPE LAW GROUP, P.C.


KONRAD L. TROPE,
ATTORNEYS FOR PLAINTIFF

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT